**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| **PASCUAL MIRAVETE, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | **Civil Action No. L- 02-CV-46** |
| | § | |
| **THE CITY OF LAREDO,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM AND ORDER**

Pending before this Court is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and, in the alternative, Motion for Summary Judgment [Doc. No. 61]; in addition, Defendant's Motion to Abate [Doc. No.51] is currently pending before the Court.

**Background**

On February 25, 2002, Plaintiffs Pascual Miravete and his wife, Gloria Miravete, instituted this action by filing suit against Defendant City of Laredo in the 111th Judicial District Court of Webb County, Texas.  On the same day, Plaintiffs Oscar J. Pena and Marta Pena filed suit in the 111th Judicial District Court against the same Defendant.  Both petitions complained of a high degree of noise and vibration over Plaintiffs' property resulting from commercial airplane traffic flying into and out of the Laredo International Airport and alleged the following: (1) a taking of property without compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution and art. I § 17 of the Constitution of the State of Texas; (2) a continuing nuisance under state law; and (3) trespass under state law.  [See Doc. No. 1].

Defendant removed both cases to this Court in an action filed March 25, 2002 [Doc. No. 1], and this Court consolidated them on April 10, 2002 [Doc. No. 5].  Defendant filed its first Motion for Summary Judgment on December 19, 2002.  With leave of court, Plaintiffs filed their Response on March 28, 2003; in addition, at that time Plaintiffs filed their First Amended Complaint, in which they maintained their takings, trespass, and nuisance claims and also asserted various claims under 42 U.S.C. § 1983.

On July 14, 2003, Magistrate Judge Adriana Arce-Flores issued a Report and Recommendation [Doc. No. 36];  the plaintiffs filed an Objection on July 24, 2003 [Doc. No. 37]; Defendant did not object.  In the Report and Recommendation (hereinafter at times referred to as "R & R"), Judge Arce-Flores, without addressing the merits of the state causes of action, suggested that those causes were unripe for review by this Court. [Doc. No. 36, p. 3].   Citing *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985), Judge Arce-Flores noted that "a claimant must exhaust his state law judicial remedies before bringing a claim under the just compensation clause." [Doc. No. 36, p. 3].[1]  Judge Arce-Flores

---

[1] Before going on, further explication on this point seems necessary.  In *Williamson County*, the Plaintiff, who was developing a residential subdivision, filed suit against the Williamson County (Tennessee) Regional Planning Commission, alleging that the defendant's application of zoning laws and regulations to the plaintiff's property amounted to a taking.  Under Tennessee law, "responsibility for land-use planning is divided between the legislative body of each of the State's counties and regional and municipal 'planning commissions.'" 473 U.S. at 176.

At the time of the events in question, developers were required to comply with a two-stage process for subdivision approval.  An initial plat was to be submitted, which, if acceptable, was temporarily approved.  This approval did not guarantee approval of a final plat, and lapsed if a final plat was not submitted within a year.  Over the next few years the Plaintiff, and his successor in interest, began development according to various preliminary and final plats.

During the course of development, the county changed its zoning ordinance.  At first, the Plaintiff's plats were evaluated according to the zoning in effect when the development began.  However, the Commission reversed itself, evaluating the application for a preliminary plat renewal according to the recently revised zoning regulations.  The plats were then approved.  However, "the Commission asked the developer to submit a revised preliminary plat before it sought final approval for the remaining sections of the subdivision."  *Id* at 179.  For various reasons the revised preliminary plat was denied approval; the developer appealed to the County Board of Zoning Appeals.  Eventually, a revised plat was also denied by the Commission, which declined to follow the recommendation of the Board that the plat be evaluated based on the zoning regulations in place at the time of the commencement of development.

Plaintiffs then filed suit pursuant to 42 U.S.C. § 1983, alleging that the Commission had taken the Plaintiff's property without just compensation.  In addition, the suit alleged violations of the plaintiff's substantive

therefore recommended that the Plaintiffs' just compensation claim and due process claims be dismissed without prejudice.[2]

Regarding state law claims, Judge Arce-Flores noted that it would be "imprudent [for the Court] to determine the validity of Plaintiff's state law claims." [Doc. No. 36, p. 3].  Allowing that "[t]he Court may entertain another opportunity to address Plaintiffs' state law claims on the occasion it is asked to consider the validity of those remaining federal claims," Judge Arce-Flores recommended that the Defendant's Motion for Summary Judgment on the Plaintiffs' state law claims be denied.  The Report and Recommendation was adopted by order of this Court filed August 13, 2003.

Judge Arce-Flores further indicated that, if the Court adopted the R & R, the following federal claims would remain pending before this Court:

---

and procedural due process rights and a violation of equal protection rights.  After the Court granted a directed verdict on the substantive due process and equal protection claims and the jury found that the plaintiff had not been denied procedural due process, the Court addressed the takings claim.

Whether the plaintiff's claim was properly considered as a 5th Amendment "taking," or "under the precept of due process, [the Court] conclude[d] that respondent's claim is premature." *Id.* at 185.  The Court elaborated that a takings claim does not ripen until "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."*Id.* at 186.  Noting that the plaintiff's failed to "avail[] themselves of the opportunities provided by the Act to obtain administrative relief," the Court dismissed the takings claims as unripe. *Id.* at 187.  In drawing a distinction between finality and exhaustion, the Court added that "there is no requirement that a plaintiff exhaust administrative remedies before bringing a § 1983 action." *Id.* at 192.

It is important to note that the *Williamson County* Court did explicitly mention resort to judicial remedies: "Respondent has not shown that the inverse condemnation procedure – [a state judicial procedure] – is unavailable or inadequate, and until it has utilized that procedure, its taking claim is premature." *Id.* at 196-97.  In addition, the Court alluded to judicial proceedings with language such as: "the Commission's denial of approval does not conclusively determine whether respondent will be denied all reasonable beneficial use of its property, and therefore it is not a final, reviewable decision." *Id.* at 194.  In addition, the Court provided that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195.

Therefore, *Williamson County* "gave two reasons why a takings claim that involved a challenge to an application of a zoning ordinance was not considered ripe: (1) the absence of a final decision, and (2) the failure on the part of the plaintiffs in that case to seek just compensation from the state." *John Corp. v. City of Houston*, 214 F.3d 573, 583-84 (5th Cir. 2000)(citing *Williamson County*, 473 U.S. at 186, 194; *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 738-39 (1997)).

[2] The dismissal of Plaintiffs' just compensation and due process claims without prejudice allowed the Plaintiffs to refile the claims in state court.  Only after the plaintiffs have exhausted his state remedies – that is, pursued all available state avenues of relief to a final judgment – does federal jurisdiction allow this Court to consider these claims.

1.      Plaintiffs' claim under the equal protection clause of the Fourteenth
Amendment to the United States Constitution alleging that Defendant has
failed to allow Plaintiffs to make proof of the value of their land and damages.

2.      Plaintiffs' claim that Defendant's alleged failure and refusal to adhere to and
follow the acquisition policies and procedures prescribed by the Uniform
Relocation Assistance and Real Property Acquisition Policies of 1970 deprived
Plaintiffs of their benefit.

3.      Plaintiffs' claim that Defendant's alleged failure to use fair and impartial
appraisers to appraise the parcels of realty in question constituted a denial of
their constitutional right to equal protection under the laws.

4.      Plaintiffs' claim that Defendant retaliated against them because Plaintiff Oscar
J. Pena, Sr. represented an individual in a separate action against Defendant and
that this deprived Plaintiff Oscar J. Pena, Sr. of a liberty interest as provided by
the Fourteenth Amendment to the United States Constitution.

[*See* Doc. No. 36, p. 4].

The Order adopting the Report and Recommendation made no mention of the remaining

claims.  However, because the R & R was in fact adopted, the Court will proceed with the above

claims as a starting point for the remaining causes of action.

### **Standards**

This Court is "under a mandatory duty to dismiss a suit over which it has no jurisdiction."

*Stanley v. Central Intelligence Agency,* 639 F.2d 1146, 1157 (5th Cir. 1981).  Indeed, it is

"incumbent on all federal courts to dismiss an action whenever it appears that subject matter

jurisdiction is lacking." *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir 1998)

(citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)); *see also*

*Thomas v. James, et al.*, 661 F.2d 67, 68 (5th Cir. 1981).

A motion to dismiss for lack of subject matter jurisdiction may be decided by the Court

"on one of three bases: the complaint alone, the complaint supplemented by the undisputed facts

evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ynclan v. Dept. of the Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).  Indeed, it is clear that in a 12(b)(1) motion to dismiss, the Court is permitted to "go beyond the pleadings to determine its own jurisdiction." *Martin v. Morgan Drive Away, Inc.*, 665 F.2d 598, 602 (5th Cir. 1982).  When a court does choose to go beyond the face of the pleadings – to entertain a "factual attack," as opposed to merely a facial attack – the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations." *Williamson*, 645 F.2d at 413.  However, dismissal for lack of subject matter jurisdiction "should be granted sparingly." *Martin,* 665 F.2d at 602.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The initial burden, borne by the moving party, requires a showing to the Court of the basis for the motion, as well as an identification of the portions of the record "which [the moving party] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)(citing *United States v. Diebold, Inc.,* 369 U.S. 654 (1962)).

Once a moving party has met its burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response...must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  The

5

adverse party must show more than "some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586.  If an adverse party completely fails to make a showing sufficient to establish an essential element of that party's case on which they will bear the burden of proof at trial, then all other facts are rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322-323.  Hence, the granting of summary judgment involves a three-tier analysis.  First, the Court determines whether a genuine issue actually exists so as to necessitate a trial. FED. R. CIV. P. 56(e).  An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).  Second, the Court must ascertain whether that genuine issue pertains to material facts. FED. R. CIV. P. 56(e).  The substantive law of the case identifies the material facts; that is, those facts that potentially affect the outcome of the suit. *Anderson*, 477 U.S. at 248.  Third, assuming no genuine issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law. FED. R. CIV. P. 56(e).

### Claims

Of particular concern in this case is the separation and elaboration of claims.  Magistrate Judge Arce-Flores ostensibly cabined the claims in such a manner as to allow the case to properly proceed in federal court.  The identification of claims and the description of the actions giving rise to these claims is a necessary prerequisite to determining if the claims are properly before this court.

The Report and Recommendation noted that the Plaintiffs' first claim, based on the Defendant's failure to allow the Plaintiffs to "make proof of the value of their land and damages," arose under the Equal Protection clause of the 14th Amendment [*See* Doc. No. 36, p. 4].  However, in Plaintiffs' Response to Defendant's Motion to Dismiss and to Defendant's

Motion for Summary Judgment, the Plaintiff alleges that "practically everyone in the area where Plaintiffs reside have received some form of benefit," except for the Plaintiffs.  The Plaintiff concludes that "they have been deprived of due process guaranteed them in the 5th and 14th amendments to the constitution in not being allowed to present any evidence with respect to the value of their property."  [Doc. No. 62, unnumbered p. 5].  But Plaintiff "contend[s] further while other members of the community have received benefits under the City's Noise Abatement Program, they have received nothing," an alleged violation of "equal protection guaranteed them under the 14th Amendment." *Id*. at unnumbered pgs. 5-6.

Plaintiff adds another nuance to the list of claims provided in the Report and Recommendation.  Claim 4, according to the R & R, involves a violation of "a liberty interest as provided by the Fourteenth Amendment to the United States Constitution." [Doc. No. 36, p. 4].  However, recently Plaintiff explicitly characterized this claim – for the first time – as a violation of the First Amendment "right of association." [Doc. No. 62, unnumbered p.  8].

Therefore, in addition to the claims enumerated by the R & R, the Court will consider the general due process claim and the 1st Amendment claim.

**Threshold Question: 42 U.S.C.A. § 1983**

Title 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 does not itself create substantive rights, but rather simply provides remedies for rights "established under the Constitution or federal laws." *Hernandez ex rel. Hernandez v.*

7

*Texas Dept. of Protective and Regulatory Services*, 380 F.3d 872, 879 (5th Cir. 2004); *see also Felton v. Polles*, 315 F.3d 470, 479 (5th Cir. 2002)(Section 1983 is not a source of substantive rights; "instead, it provides a method for vindicating federal rights elsewhere conferred"). Therefore, "'an underlying constitutional or statutory violation is a predicate to liability under § 1983.'" *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997)(quoting *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)).  Consequently, the "threshold issue presented by any case arising under Section 1983 is whether a plaintiff has sufficiently alleged a deprivation of a right secured by the Constitution."  *Hernandez*, 380 F.3d at 879 (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979)).

In outlining the scope of municipal liability under § 1983, "Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Board of County Comm'rs of Bryan County, Okla v. Brown*, 520 U.S. 397, 400, (1997)(quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)).  However, a municipality is not necessarily responsible for the tortious acts of an employee and certainly not responsible under the doctrine of respondeat superior.  *See Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985); *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986); *Bd. of County Comm'rs of Bryan County, Okla*, 520 U.S. at 403.

In order to successfully challenge an action of a municipality under Section 1983, a plaintiff must identify a municipal policy or custom that gave rise to the plaintiff's injury. *See Monell,* 4436 U.S. at 694; *Pembaur,* 475 U.S. at 480-81; *Canton v. Harris,* 489 U.S. 378, 389 (1989).  The Fifth Circuit has elaborated on this requirement: "municipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of

constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)(citing *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037, 56 L.Ed.2d 611)( a plaintiff must show "that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.").[3]

In making a Section 1983 claim based on municipal liability, it is "imperative that the policies for which municipal section 1983 liability is sought be specified in the trial court." *Piotrowski*, 237 F.3d at 580, n. 27.[4]  In the explication of the municipal policy, "[i]solated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability." *Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir. 1984) *quoted in Piotrowski*, 237 F.3d at 581.  Moreover, "[a] customary

---

[3] The *Monell* Court was responding to the argument that "a single act by a decisionmaker with final authority in the relevant area constitutes a 'policy' attributable to the municipality itself." 520 U.S. at 404.  The Court indicated that "a final decisionmaker's adoption of a course of action 'tailored to a particular situation and not intended to control decisions in later situations' may, in some circumstances, give rise to municipal liability under § 1983." *Id*, (quoting *Pembaur*, 475 U.S. at 481, 106 S.Ct. at 1299).  However, "[i]solated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability." *Bennett v. City of Slidell*, 728 F.2d 762 (5th Cir. 1984) *quoted in Piotrowski*, 237 F.3d at 581.

[4] Defendant cites *Palmer v. City of San Antonio*  for the proposition that "[a] plaintiff must state specific facts that show an unlawful policy or custom exists." [Doc. No. 61, p. 11]; *see* 810 F.2d 514, 516 (5th Cir. 1987).  However, in *Leatherman v. Tarrant County Narcotics*, the Supreme Court explicitly abrogated the requirement of particularized pleadings in the claims of municipal liability. *See* 507 U.S. 163, 113 S.Ct. 1160 (1993). After discussing *Palmer* and its requirement that plaintiffs in Section 1983 municipal liability cases plead with particularity and detail, the *Leatherman* Court held: "[w]e think that it is impossible to square the 'heightened pleading standard' applied by the Fifth Circuit in this case (*Palmer*) with the liberal system of 'notice pleading' set up by the federal rules." 507 U.S. at 168, 113 S.Ct. at 1163.

In filing a motion with this Court, an attorney represents that "claims...and other legal contentions...are *warranted by existing law* or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." FED. R. CIV. P. 11(b)(2)(emphasis added).  In addition, "[a]ll judicial systems prohibit, at a minimum, the filing of frivolous or knowingly false pleadings.  [A] filing or assertion is frivolous if...the lawyer is unable either to make a good faith argument that the action taken is *consistent with existing law* or that it may be supported by a good faith argument for an extension, modification or reversal of existing law." TEX. DISCIPLINARY R. PROF'L. CONDUCT 3.01(2), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp. 2005)(emphasis added).

Defendant cited law that has not been valid for more than 11 years.  Perhaps Counsel for the Defendant began citing *Palmer* before its 1993 abrogation by *Leatherman*, or perhaps Counsel's research was truncated prematurely.  Whatever the reason, the result is unacceptable.  Counsel would do well in the future to cite-check all cases that are submitted to this or any other Court.

municipal policy cannot ordinarily be inferred from single constitutional violations." *Piotrowski*,

237 F.3d at 581 (citing *Webster v. City of Houston*, 735 F.2d 838, 851 (5th Cir. 1984)(en banc).

 In the instant case, the Plaintiffs' various claims can be distilled into one essential

complaint, to wit, that the City of Laredo failed to fully and adequately compensate the Plaintiffs

for the damage and inconvenience caused by airplane traffic arriving and departing from Laredo

International Airport.  The complaint more specifically identifies the procedures that the City

employed as part of the Laredo International Airport Noise Compatibility Program.  It is

uncontroverted that the City of Laredo implemented the "Laredo International Airport Noise

Compatibility Program" in accordance with "certain guidelines defined in the Uniform

Relocation Assistance and Real Property Acquisition Act of 1970."  [Defendant's Exhibit D].

The Plaintiffs' complaint revolves around the actions of the City in implementing the

aforementioned compatibility program.  The existence of a municipal policy is undisputed;

therefore, the threshold requirement for municipal liability under § 1983 has been satisfied.

### Due Process and Equal Protection, Part I

In an apparent attempt to persuade the Court that the federal claims in this case can be

distinguished from the state claims, the Plaintiffs contend that:

> "[e]ach of the two cases rest on its own different foundation.  The
> Federal (sic) case is based on deprivation of rights and benefits that
> Plaintiffs should have received as a result of the federal grant
> received by the City of Laredo for its noise abatement problem.
> The state case is based on common law actions for nuisance,
> trespass[,] assault[,] and taking of property without compensation."

Doc. No. 62, unnumbered p. 2.

Plaintiffs, however, are making a somewhat artificial distinction.  The basis for the state

takings claim is not the mere presence of the airplanes, but rather the failure of the City of

Laredo to take adequate measures to compensate for the loss created by such presence.  The

federal claims are similarly based, if more specific.  That is, in the federal complaint, the
Plaintiffs point to somewhat more specific actions on the part of the City as constitutional
violations, among them the failure to allow Plaintiffs to offer their own appraisals of their homes
and the failure on the part of the City Council to approve the settlement reached by the Plaintiffs
and the attorneys for the City.  In essence, the state claims complain of a deprivation of property
without compensation, and the federal claims elucidate the specific means by which the
deprivation took place.  The question remains whether the Plaintiffs can properly proceed with
the federal claims in this Court.

    The Supreme Court has unequivocally stated that, in the interests of both exhaustion and
finality, a federal takings claim may proceed only where the state procedures have been fully
utilized. *See Williamson County*, 473 U.S. 172.  In *Williamson County*, the Court addressed not
only the claims based on the Just Compensation Clause, but also under the Due Process Clause.
The argument propounding the due process claim is based not on the theory that the government
act (in that case a regulation) was a violation of the takings clause which required compensation,
but as an impermissible over-extension of the police power.  The regulation, so the theory goes,
extends so far as to be the functional equivalent of a taking by eminent domain.  If, as the
plaintiff in *Williamson* argued, the regulation was an impermissible extension of the police
power, the remedy is not "just compensation," but rather invalidation of the regulation.  *Id*. at
197.  The argument that excessive regulation constitutes a violation of the Due Process Clause
rather than a taking finds its genesis in *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct.
158, 67 L.Ed. 322 (1922).  Writing for the Court, Justice Holmes stated: "The general rule at
least is, that while property might be regulated to a certain extent, if regulation goes too far it will
be recognized as a taking." 260 U.S. at 415, 43 S.Ct. at 160 *quoted in Williamson County*, 473

U.S. at 198.  Proponents of the taking-as-due-process-violation theory argue that the Court in *Pennsylvania Coal* used the word "'taking' not in the literal Fifth Amendment sense, but as a metaphor for actions having the same effect as a taking by eminent domain." *Williamson County,* 473 U.S. at 198.

The *Williamson County* Court, however, refused to pass upon the merits of the petitioner's claim. *Id.* at 199.  The due process heuristic, the Court reasoned, was subject to the same finality requirements as the takings framework.  In order to determine whether an exercise of the police power had gone too far, much like the inquiry whether a taking had been effected without just compensation, a factual determination must be made as to exactly how far is "too far."  The Court summarized the task as "distinguish[ing] the point at which regulation becomes so onerous that is has the same effect as an appropriation of the property through eminent domain or physical possession." *Id.*

In the case of *Williamson County,* the factual determination of when a regulation "goes to far" depended on the exact manner in which the regulation was imposed and the effect which it had.  That is, until the Commission charged with approving development projects had reached an ultimate decision on the plaintiff's proposed development, the Court was unable to determine how the plaintiff's property rights would be affected.  Therefore, until the administrative remedies and the judicial remedies were exhausted, the Court reasoned, the plaintiff's due process claim was, similar to the takings claim, premature.  *Id.* at 199-200.

Similar reasoning can be applied in the instant case.  Though the Plaintiffs have not explicitly argued a due process claim arising under an abuse of the police power, the fact remains that Plaintiffs' state case is as yet unresolved.  Therefore, the extent to which Plaintiffs' property rights have been interfered with – if at all – has yet to be determined.  As such, the Plaintiffs' due

process claims appear to be premature.  However, the instant case differs in an important respect from the *Williamson County* case.  In the case at bar, the Plaintiffs' allegation of a due process violation is not targeted at the regulation itself; they do not argue that the overflights themselves are violations of the 5th and 14th Amendments.  Instead, they object to the procedure by which the City has dealt with the Plaintiffs in the course of attempting to compensate the Plaintiffs for the increased air traffic.[5]  Therefore, this case is critically different from *Williamson County* in that the regulation itself is not under attack.  Rather, the application of the compensation procedures are the subject of the complaint.[6]  Therefore, if the Plaintiffs' claims are premature, it is not because the application of the regulation has yet to be finalized, but rather because the procedures which the Plaintiffs attack may not yet be concluded.

In addition, this Court is wary of potential incongruity with the state court.  Should this Court analyze the City's actions under a due process framework and find a violation, the remedy, under the *Williamson County* doctrine, would be invalidation of the "regulation" at issue; here, the regulation by which airplanes are allowed passage over the Plaintiffs' homes.  If the state court should simultaneously rule that the City had not effected a taking, the result would be the invalidation by a federal court of a practice which a state court ruled constitutional.  Certainly there are issues of abstention, comity and preclusion implicated here.  However, the Plaintiffs in this case have not argued that compliance with the dictates of due process requires the cessation of airplane flights over the Plaintiffs' houses.  Rather, they have apparently pointed out specific flaws in the procedure by which the City attempted to compensate the Plaintiffs for the taking.  Thus, though the Plaintiffs' federal claims can be construed as attacks on specific elements of procedure that have already been completed, rather than more substantive claims regarding the

---

[5] Indeed, the fact of the taking seems virtually assumed.  The dispute, rather, centers around the compensation procedure and compensation amount that should follow the taking.
[6] The R & R specified that these claims remain; see remaining claims #1 and #3 [Doc. No. 36, p. 4].

legitimacy of the taking (procedure) in its entirety, the Court will examine both procedural and substantive due process.[7]

### Does a Takings Claim Subsume a Substantive Due Process Claim?

The argument has been made in previous cases that Substantive Due Process claims that are based on the same set of operative facts as a concomitant takings claim are consumed by that takings claim. *See Graham v. Connor*, 490 U.S. 386 (1989)(A U.S. Constitutional Amendment that provides an "explicit textual source" for the rights at issue must be the guide for a claim based on those rights, rather than basing the claim on the more "generalized notion of 'substantive due process.'"); *see also United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219 (1997) ("if a constitutional claim is covered by a specific constitutional provision...the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."); *Bateman v. City of West Bountiful*, 89 F.3d 704 (10th Cir. 1996)("[D]ue process and equal protection claims are subsumed within the more particularized protections of the [Takings] Clause").  The ostensible goal of *Graham* is to avoid the unnecessary expansion of substantive due process where other constitutional protections are sufficient. 490 U.S. at 842; *John Corp. v. City of Houston*, 214 F.3d 573, 582 (5th Cir. 2000); *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)("[T]he Court has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.").  Therefore, any duplication of constitutional protections should be resolved by reference to the more explicit source of constitutional protection. *John Corp*, 214 F.3d at 582.

---

[7] Note that these due process claims do not derive from the list offered by the R & R; however, as previously explained, it appears that the Plaintiffs are positing claims under the due process clause.

However, the Court in *John Corp.* rejected the "blanket rule [that] the Takings Clause subsumes any substantive due process claim relating to a deprivation of property." 214 F.3d. at 583. Rather, the Court emphasized that "a careful analysis must be undertaken to assess the extent to which a plaintiff's substantive due process claim rests on protections that are also afforded by the Takings Clause." *Id*. (citations omitted).

In the instant case, the Plaintiffs' substantive due process claims arise out of the procedure by which the City attempted to compensate the Plaintiffs for the effects of increased air traffic over Plaintiffs' homes. Plaintiffs' complaints center around the process by which the City attempted to compensate the Plaintiffs for a taking. In short, the Plaintiffs complain that the compensation offered them by the City was not just. Such is the nucleus of a takings claim. Because "[s]ubstantive due process claims that rest on the same protections that are afforded by the Takings Clause are subsumed by the federal takings claims," Plaintiffs' substantive due process claims are subsumed within the unripe takings claims. *Id.* In fact, the Plaintiffs virtually conceded that the claims outside of the takings claims would be superfluous if the takings claims were properly compensated. The following colloquy occurred on November 17, 2004 between Judge Keith P. Ellison and counsel for the Plaintiffs:

> THE COURT: But let's assume you're compensated beyond your wildest dreams in state court. I mean, what case do we have here then in federal court? I mean you won a big recovery for – under the Texas Constitution for the nuisance claim, for the trespass claim, for the breach of contract. If you win big on all of those, do you really have federal --.
>
> MR. PENA SR: It could be that that covers everything and that further litigation would not be necessary over here.

[Transcript of Status Conference, Doc. No. 54, p. 4].

Though one set of facts can give rise to multiple claims, if the compensation for the taking renders the additional claims moot, it is not a leap of logic to suggest that the various claims represent protections of the same fundamental right. The substantive due process claims leveled by the Plaintiffs amount to protestations of the manner in which the City attempted to provide just compensation for a taking. Given the facts before the Court, it is apparent that the Plaintiffs are perfectly able to completely state their complaint and receive full relief based on the rights guaranteed under the Takings Clause. It is therefore the judgment of this Court that any substantive due process claims made by the Plaintiffs are subsumed within the takings claim.[8]

### Procedural Due Process

Procedural due process ensures fairness in governmental decisions by requiring that certain procedures be followed whenever its agents deprive citizens of life, liberty or property. *Daniels v. Williams*, 474 U.S. 327 (1986).

Even though Procedural Due Process claims may not be subject to *Williamson County*'s exhaustion and finality requirements, they nonetheless are subject to the general rule that "a claim is not ripe if additional factual development is necessary." *John Corp.*, 214 F.3d at 585-86; *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987)("A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required."); *see also Texas v. United States*, 523 U.S. 296, 300, (1998)("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."(citation and internal quotation marks omitted)).

---

[8] Even if the due process claims can be separated from the takings claims, when a takings claims is unripe, "any alleged due process violation relating to the alleged taking of property is premature." *Rolf v. City of San Antonio,* 77 F.3d 823, 827 (5th Cir. 1996).

Though the Plaintiffs have not explicitly pled a procedural due process claim, the facts that are mentioned, though sparse, suggest a complaint based on the procedures employed by the City.  But the Plaintiffs complain of a process that is not yet complete; their state case is still pending.  The constitutional right to due process is not "an abstract right to hearings conducted according to fair procedural rules.  Rather, it is the right not to be deprived of life, liberty or property without such procedural protections."  *Monk v. Huston*, 340 F.3d 279, 282-83 (5th Cir. 2003).  Until such time as the state case is entirely resolved, and the amount of procedural protections afforded the Plaintiffs conclusively determined, the Plaintiffs' procedural due process claims are premature and are therefore dismissed.  *See VRC, L.L.C. v. City of Dallas*, 2005 WL 41641 (N.D.Tex., Jan 10, 2005)("[U]ntil the Texas courts decide the inverse condemnation action, this court cannot determine whether a taking has occurred and will not be able to fully evaluate VRC's procedural due process claim"); *Mikeska v. City of Galveston*, 328 F.Supp.2d 671, 679 n. 1 (S.D.Tex. 2004)("Until a takings claims has been resolved, sufficient facts do not exist to resolve the question of what procedure should have preceded the taking."(citation omitted)); *cf. Williamson County*, 473 U.S. at 195 n.14, 105 S.Ct. at 3121 n. 14 ("Unlike the Due Process Clause, ... the Just Compensation Clause has never been held to require pretaking process or compensation.").[9]

---

[9] Plaintiffs also claim that the City's refusal to approve the settlement agreement between the Plaintiffs and the defendant's lawyers constituted a violation of a liberty interest protected by the 14th Amendment.  As noted above, the constitutional right to due process is not "an abstract right to hearings conducted according to fair procedural rules.  Rather, it is the right not to be deprived of life, liberty or property without such procedural protections." *Monk*, 340 F.3d at 282-83.  Therefore if this claim is intended to be brought under the rubric of procedural due process, it is unripe.

If the Plaintiff intended to bring this claim as an Equal Protection one, his claim fails as a matter of law. Plaintiff has failed to allege sufficient facts to show that he was treated differently than similarly situated individuals, the gravamen of an equal protection claim. *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988).

## Equal Protection

The Plaintiffs allege that their treatment by the City in the course of implementing the Laredo International Airport Noise Compatibility Program was conducted in such a manner that denied the Plaintiffs equal protection under the law.[10]   The Equal Protection Clause is a mandate that "all persons similarly situated should be treated alike." *Brennan*, 834 F.2d at 1257 (citing *City of Cleburne, Tex. V. Cleburne Living Center*, 473 U.S. 432, 439, (1985)).  "[A] violation of equal protection occurs only when the government treats someone differently than others similarly situated; if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action – even if irrational – does not deny them equal protection of the laws." *Brennan*, 834 F.2d at 1257.

The Plaintiffs did not include an equal protection claim in their original complaint. [*See* Doc. No. 1].  On February 3, 2003, the Plaintiffs requested leave to amend their pleadings to include claims based on 42 U.S.C.A 1983 [Doc. No. 25] .  The exact nature of the claims was undisclosed, and the motion was granted on February 24, 2003. [Doc. No. 27].  In their amended complaint, filed March 28, 2003, the Plaintiffs added a claim based on an "deprivation of said Plaintiff's liberty interest under the Fifth and Fourteenth Amendments . . . [and] [i]n so far as Plaintiffs are being denied equal treatment and protection by Defendant City of Laredo, they are furthermore entitled to recover damages from Defendant under the equal protection clause of the Fourteenth Amendment." [Doc. No. 28, p. 7-9].  Additionally, at the end of that amended complaint, the Plaintiffs further alleged the following bases for equal protection claims: "[t]he City's failure and refusal to pay Plaintiffs in accordance with the settlement agreement reached [...and] in not using fair and impartial appraisers to appraise the parcels of realty in question." *Id.* at 9-10.

---

[10] This section refers to remaining federal claim #1 as listed by the R & R.

The evidence in the record fails to support an equal protection claim.  Plaintiffs do not identify themselves as a class, nor do they offer evidence that they were treated differently from similarly situated individuals.  The first basis for Plaintiffs' claims, according to their response, was the City Council's failure to approve the settlement agreement reached between the Plaintiffs and the Defendant's attorneys.  However frustrating this result might have been to Plaintiffs, it does not give rise to an equal protection violation.  The record does not indicate that similarly situated individuals were treated differently; according to the record, in fact, no other homeowners even entered into negotiations with the City.

The Plaintiffs complain that they were not allowed to use appraisers of their own selection; however, there is no evidence that other homeowners were allowed to use their own appraisers.  In fact, the record indicates that the same appraisers – Ms. Frances Villarreal and Mr. Robert R. Snyder – were used by the City to appraise both the Plaintiffs' homes as well as the surrounding homes. [*See* Plaintiffs' Exhibits 13, 18, 20, 21, 22, 23].

The Plaintiffs' averments that come closest to giving rise to an equal protection violation, though they are not couched in those terms, are the dollar amounts the City offered to pay for homes in the Plaintiffs' neighborhood.  However, there is no evidence to suggest that these homeowners were in sufficiently similar situations to give rise to an equal protection claim.  Certainly all of the homes were in the same neighborhood, but the similarities largely end there.  There has been no showing that the houses are all of the same value and the Plaintiffs' alone have been under-appraised.  Moreover, the Plaintiffs admit that appraising is more art than science, and that disparities are an inherent part of the appraisal process.[11]  That said, all parties

---

[11] "Appraisers are not infallible and there are oftentimes disagreements as to values of realty between appraisers, since appraisals are nothing more than a matter of opinion." [Plaintiffs' Exhibit 16, Doc. No. 29, p. 2].  The City of Laredo, in addition, acknowledges that "Each parcel of property is different and; therefore, (sic) no single formula can be devised to appraise all properties." Plaintiffs' Exhibit 18.

admit there are certainly objective factors that guide the appraisal process, among them square footage, amenities, lot size, neighborhood, etc.[12]  The Plaintiffs have not demonstrated that their houses are, in objective terms or any other, comparable to the houses that allegedly were purchased for higher amounts.[13]

### Uniform Relocation Assistance and Real Property Acquisition Claim[14]

Plaintiffs did not include an explicit claim under the Uniform Relocation and Assistance and Real Property Acquisition Act (hereinafter "the Act") in their original complaint. [*See* Doc. No. 1].  However, their amended complaint included an allegation that: "[t]he City's failure and refusal to adhere to and follow the acquisition and policies and procedures prescribed by the Uniform Relocation Assistance and Real Property Acquisitions Policies of 1970 deprived Plaintiffs of the benefit thereof."  [Doc. No. 28].

The Uniform Relocation Assistance and Real Property Acquisition Policies for Federal and Federally Assisted Programs, 42 U.S.C. § 4601 *et seq.*, only applies to "displaced persons, [which are defined as] any person who moves from real property...as a direct result of a written notice of intent to acquire or the acquisition of such real property...by a federal agency...or on

---

[12] The City of Laredo, in their description of the Fee Simple Acquisition Program of the Noise Compatibility Program, suggests additional factors that "an appraiser typically considers in estimating the value of real property, [among them,] 1. How it compares with similar properties in the area that have been sold recently.  2. How much rental income it could produce.  3. How much it would cost to reproduce the buildings and other structures, less any depreciation." [Plaintiff's Exhibit 19, p.2].

[13] It is important to note the Plaintiffs' statement that they never had any desire, nor intended to at any point, move from their current locations.  In fact, the record suggests (and Plaintiffs do not contest) that the Plaintiffs remain residents of the homes in question.  [*See* Doc. No. 61, p. 4].  Additionally, the Plaintiffs and the City, at one point, came to an agreement regarding the fair price of an avigation easement.  Even though Plaintiffs proceeded "with some misgivings," [Doc. No. 29] the resulting settlement reaffirms the suggestion that the Plaintiffs desire to remain in their residences.  Therefore, given the Plaintiffs' disinclination to leave their homes, the quarrel over appraising seems to amount to nothing more than gamesmanship.  If the Plaintiffs have no intention of moving, a high appraisal of their home, at least in the context of this quarrel, has no worth beyond bolstering the Plaintiff's bargaining power.  Plaintiffs hired their own appraiser, and it seems logical that the City's lawyers, at the time of negotiation, were aware of the disparity in figures between appraisers.  Thus, the detrimental effect of the City's exclusion of Plaintiffs' appraisers seems minimal in the context of a negotiated settlement wherein the Plaintiffs had ample opportunity to present their own valuation of their homes.

[14] This section refers to remaining federal claim #2 as listed by the R & R.

which such person is a residential tenant...as a direct result of rehabilitation, demolition, or such other displacing activity."  § 4601(6)(A)(i).  The Supreme Court held that the Congressional history of the Act "leaves little doubt that Congress's concern was still with *displacements* caused by the acquisition of property for a Government program or project." *Alexander v. United States Dep't of Hous. and Urban Dev.,* 441 U.S. 39, 51-52 (1979)(emphasis added); *see also Beaird-Poulan Div. of Emerson Elec. Co. v. Dept. of Highways, State of Lousiana*, 441 F.Supp. 866 (W.D. La. 1977)("The Act provides for payments by the United States Government to compensate displaced persons.").   The Supreme Court made clear that access to relief under the Act was premised on a finding that the Plaintiffs were "displaced persons." *Id*.  It is undisputed that the Plaintiffs remain residents of the properties in question.  [*See* Doc. No. 61, p. 4].  In addition, the Program of which the Plaintiffs complain is entirely voluntary.  [*See* Plaintiffs' Exhibit 19, p. 1].  Therefore, because the Plaintiffs do not meet the requirements under 42 U.S.C. § 4601 as "displaced persons," they lack standing to pursue a claim pursuant to the Act.

The Act also provides that "[t]he provisions of section 4651 of this title create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation." 42 U.S.C. § 4602(a).  Section 4651 provides the Uniform Policy on Real Property Acquisition Practices; essentially, section 4651 is the policy and procedures part of the Act.  The Plaintiffs' complaint centers on the procedures the City of Laredo employed while enacting the Laredo International Airport Noise Compatibility Program.  However, the program was a voluntary one and the Plaintiffs were never displaced.  Therefore, the Plaintiffs' claims under the Act fail as a matter of law.

**1st Amendment Claim**[15]

To establish a First Amendment retaliation claim, "a plaintiff must prove: (1) defendants were acting under color of state law; (2) the plaintiff's activities were protected under the first amendment; and (3) the plaintiff's exercise of the protected right was a substantial or motivating factor for defendant's actions." *Rolf*, 77 F.3d at 827. Only after the plaintiff has established these initial elements does the burden shift to the defendant to show that the action in question would have been taken had there been no retaliatory motive. *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1997); *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997)(citing *Pierce v. Texas Dep't. of Crim. Justice Inst. Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994)).

It is essential to a First Amendment retaliation claim that evidence exist in the record which at least raises a genuine issue of fact as to whether the defendant's conduct was motivated by a desire for retaliation. However, "[m]ere conclusionary allegations of retaliation will not withstand a summary judgment challenge." *Woods v. Smith*, 60 F.3d 1161, 1167 (5th Cir. 1995). In most cases, rather than direct evidence of motivation, the plaintiff will produce "a chronology of events from which retaliation may plausibly be inferred." *Id.* (citing *Cain v. Lane* 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988)). Summary judgment is warranted when the evidence does not fall into a pattern from which a reasonable inference of retaliation may be drawn. *See Garcia v. Reeves County, Tex.*, 32 F.3d 200, 204-05 (5th Cir. 1994); *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1075 n.5 (3rd Cir. 1990)(question of defendant's motivation need not go to the jury if it is subject to summary judgment after review of affidavits and evidence); *Torricellas v. Poole*, 954 F.Supp. 1405, 1412-13 (C.D. Cal. 1997)(there must be some evidence in the record from which a trier of fact can infer a retaliatory motive).

_____

[15] This section refers to remaining federal claim #4 as listed by the R & R.

In the instant case, the action which gives rise to the Plaintiffs' 1st Amendment retaliation claim – the City's failure to approve a settlement agreement – was certainly an operation of state law.  The actions of the City Counsel of the City of Laredo undoubtedly meet the first requirement of a valid 1st Amendment retaliation claim.

The alleged basis for the retaliation, the fact that "Plaintiff Oscar J. Peña, Sr., at one time represented the former Police Chief in a suit to collect a small amount of money which was owed by the City to such individual," falls under the umbrella of protected 1st Amendment activity [Doc. No. 62, unnumbered pgs. 7-8].

However, the third prong, the requirement that the plaintiff make a showing that the defendant's actions were done out of a retaliatory motive, is far more difficult.  The record provides sparse evidence to support even an inference of retaliation.  However, the Court need not dispose of any 1st Amendment claim, as none are properly before the Court.

Plaintiffs' first notation of a retaliation claim is found in their properly amended complaint filed March 28, 2003 [Doc. No. 28, pgs. 7-8].  The Plaintiffs characterized the claim as a "deprivation of Plaintiff's liberty interest under the Fifth and Fourteenth Amendments" based on one of the Plaintiffs' prior legal representation of an individual who brought a claim against the City. *Id.*  The Report and Recommendation of July 14, 2003, [Doc. No. 36] which was subsequently adopted on August 13, 2003[Doc. No. 38], allowed the claim to proceed as a deprivation of "liberty interest as provided by the Fourteenth Amendment to the United States Constitution."

However, the retaliation claim recently underwent a makeover, finding its latest constitutional home in the First Amendment.  According to the Plaintiffs' response to Defendant's motion to dismiss and motion for summary judgment, filed January 20, 2005, the

City's refusal to approve the settlement reached by the Plaintiffs and the Defendant's attorneys constituted a violation of Plaintiff Peña, Sr.'s "first amendment right of association."

The defendant removed this case to federal court on March 25, 2002 [Doc. No. 1]; the Plaintiffs filed an amended petition, with approval of the Court, on March 28, 2003 [Doc. No. 29]. Yet the first appearance of the 1st Amendment comes by way of a response filed nearly two years later (January 18, 2005)[Doc. No. 62].

The Federal Rules of Civil Procedure provide lenient pleading requirements. A pleading merely requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and the pleading should be "so construed as to do substantial justice." FED. R. CIV. P. 8(a), 8(f). In addition, the theory of notice pleading embodies the precept that "a basic objective of the rules is to avoid civil cases turning on technicalities." CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1215 (3d ed. 2004); *see also Todd v. Nello L. Teer Co.*, 308 F.2d 397, 400 (5th Cir. 1962)("Rights of litigants are decided on the facts placed before the court and the function of pleadings is merely to furnish the vehicle for getting the facts to the court in orderly fashion.") However, a complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." *Conley v. Gibson*, 355 U.S. 41,47 (1957).

Therefore, the interests of liberal pleading standards as well as fairness to the defendant mitigate against disposition of any 1st Amendment claims at this time. However, if the Plaintiffs choose to pursue such a claim, the Court will entertain supplemental briefing on the topic for 10 days after the entry of this judgment.[16]

---

[16] All parties are directed to the 1st Amendment discussion contained herein should the 1st Amendment claim endure.

## CONCLUSION

The Plaintiffs' Due Process claims are subsumed within the takings claim; therefore, said claims are **DISMISSED WITHOUT PREJUDICE.**

The Plaintiffs have failed to make the requisite showing for a cognizable Equal Protection claim; therefore, summary judgment as to these claims is hereby **GRANTED.**

The Plaintiffs do not have standing to pursue a claim under the Uniform Relocation Assistance and Real Property Acquisition Policies of 1970.  Therefore, the Defendant's Motion for Summary Judgment regarding these claims is hereby **GRANTED.**

Regarding the potential 1st Amendment claim, the Plaintiffs are hereby given 10 days – excluding weekends and holidays – from the entry of judgment in order to amend their complaint in order to state a valid claim.  If, after 10 days, the Plaintiffs have failed to supplement the record in this regard, a final judgment will issue.  Should the Plaintiffs file an amended complaint, the Defendant will have 20 days – again excluding weekends and holidays – in which to respond.

Additionally, Defendant's Motion to Abate is hereby **RENDERED MOOT.**

IT IS SO ORDERED.

DONE on this 14th day of July, 2005, at Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS NOTICE SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**